UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 04-CV-0820 |
| INTERNAL REVENUE SERVICE, | ) ) | |
| Defendant. | ) ) ) | |

MEMORANDUM OPINION

The Consolidated Appropriations Act of 2004 (the "2004 Act"), Pub. L. No. 108-199, barred the Internal Revenue Service (the "IRS") from using 2004 Act funds "to convert to contractor performance an activity or function . . . unless . . . the conversion is based on the results of a public-private competition plan." 2004 Act, Div. F, § 647(a). The IRS used 2004 Act funds to issue task orders which had the effect of replacing IRS mailroom employees with contractor employees. The IRS did not hold a public-private competition before issuing those task orders.

The National Treasury Employees Union ("National") brought this suit under the Administrative Procedures Act charging that the IRS actions violated the quoted provision of the 2004 Act. For relief, National seeks, among other things, (1) a declaration that the IRS mailroom conversion violated the 2004 Act and (2) the reinstatement of certain of its members to their mailroom positions.

Four motions are pending: (1) National has filed a motion for leave to file a second amended complaint, (2) the IRS has filed a motion to dismiss National's first amended

complaint for lack of subject matter jurisdiction, (3) National has filed a motion for summary judgment, and (4) the IRS has filed a cross-motion for summary judgment. Each of these motions was transferred to the undersigned pursuant to Local Civil Rule 40.6(a). *See* Dec. 20, 2005 Order. For the reasons stated herein, an accompanying Order grants National's motion for leave to file a second amended complaint, denies the IRS motion to dismiss for lack of subject matter jurisdiction, grants in part and otherwise denies without prejudice National's motion for summary judgment, and denies the IRS cross-motion for summary judgment.

## STANDARD OF REVIEW

Leave to file an amended complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also, e.g.*, *Harrison v. Rubin*, 174 F.3d 249, 252 (D.C. Cir. 1999).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, e.g.*, *Paraskevaides v. Four Seasons Washington*, 292 F.3d 886, 893 (D.C. Cir. 2002).

## ANALYSIS

**I.      National's Motion for Leave to File a Second Amended Complaint.**

National seeks leave to file a Second Amended Complaint for Monetary, Declaratory, and Injunctive Relief, which it has submitted in support of its motion. National argues persuasively that its second amended complaint timely alleges new and material factual developments and that permitting amendment will not unduly prejudice the IRS. Accordingly,

the accompanying Order grants National's motion for leave to file its second amended complaint. *See* Fed. R. Civ. P. 15(a) (requiring the grant of leave to amend where justice so requires).

## II. The IRS Motion to Dismiss National's First Amended Complaint for Lack of Subject Matter Jurisdiction.

The grant of National's motion for leave to file its second amended complaint obviously renders moot the IRS motion to dismiss National's first amended complaint. National has not expressly requested that the court consider its motion to dismiss in relation to National's second amended complaint. *Cf., e.g.*, IRS Unopposed Motion to Treat its Motion to Dismiss the [Original] Complaint as a Motion to Dismiss the [First] Amended Complaint (filed Aug. 25, 2004). More importantly, all of the IRS motion to dismiss arguments are incorporated into its cross-motion for summary judgment and thus are evaluated (and rejected) in that context below at subsection III(A). Accordingly, the accompanying order denies the IRS motion to dismiss.

## III. National's Motion for Summary Judgment and the IRS Cross-Motion for Summary Judgment.

National argues that the undisputed material facts demonstrate that the IRS, in violation of the 2004 Act, used funds appropriated by that act to convert its mailroom to operation by an outside contractor. The IRS counters that (1) this court lacks subject matter jurisdiction (in other words, it generally reiterates its motion to dismiss arguments as part of its cross-motion for summary judgment) and/or (2) the undisputed material facts demonstrate that it did not use 2004 Act funds to convert its mailroom but, rather, completed that conversion before the 2004 Act went into effect.

### A. Subject Matter Jurisdiction.

The IRS raises six arguments in favor of dismissal for lack of subject matter

jurisdiction: (1) National lacks standing; (2) sovereign immunity precludes National's lawsuit; (3) National lacks prudential standing under the Administrative Procedures Act; (4) the Administrative Disputes Resolution Act of 1996 deprives this court of subject matter jurisdiction; (5) the Civil Service Reform Act of 1978 deprives this court of subject matter jurisdiction; and (6) this case is moot.  These arguments lack merit.[1]

### 1. Standing.

National has alleged a redressable injury-in-fact caused by the IRS conduct: e.g., loss of union dues as a result of the IRS improper and premature firing of certain of its employees.  This harm is (1) "concrete and actual or imminent," (2) "fairly traceable" to the complained-of conduct, and (3) capable of amelioration through the requested relief.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (quotation marks omitted).  Here, National has alleged that member-employees lost their IRS mailroom jobs prematurely as a result of the IRS alleged illegal conduct, thereby causing National's loss of certain union dues.  Such loss of dues would be a concrete and actual harm fairly traceable to the IRS alleged use of 2004 Act funds to convert its mailroom. This harm could be at least partially redressed by National's request for the temporary reinstatement of certain dues-paying member-employees.  Accordingly, dismissal for lack of standing is not appropriate.

### 2. Sovereign Immunity.

The Administrative Procedures Act waives sovereign immunity over at least part of National's claim.  That act provides, in relevant part: "An action in a court of the United States

---

[1] As discussed below at subsection III(B), National has not only alleged, but has established, the facts necessary to rebut the IRS subject matter jurisdiction arguments.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

seeking *relief other than money damages* and stating a claim that an agency . . . acted . . . in an official capacity . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702 (emphasis added). National seeks relief other than money damages, specifically the temporary "reinstatement" of certain IRS mailroom employees to their former positions. Second Amended Complaint, Request for Relief ¶ C. Accordingly, dismissal on sovereign immunity grounds is not appropriate.

### 3. Prudential Standing.

The interest that National seeks to protect arguably falls within the zone of interests to be protected by Section 647(a) of Division F of the 2004 Act. *See National Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998). That section required that the IRS, as a condition of using 2004 Act funds to convert its mailroom, first conduct a "public-private competition." The IRS did not do that. Such a "public-private competition" would have allowed the IRS mailroom employees, through formation of a "most efficient and cost effective organization," an opportunity to compete for their jobs. 2004 Act, Div. F, § 647(a). National's complaint seeks to enforce the Section 647(a) competition requirement by claiming that its violation led to the premature firing of certain employees. Because Section 647(a) arguably provides National with some protection against loss of membership and membership dues, National's complaint seeks to protect an interest arguably within that section's zone of interests. Accordingly, dismissal for lack of prudential standing is not appropriate.

### 4. The Administrative Disputes Resolution Act of 1996.

The Administrative Disputes Resolution Act of 1996 (the "Disputes Act") creates in the United States Court of Federal Claims exclusive jurisdiction, after January 1, 2001, "to

render judgment on an action *by an interested party* objecting to . . . any alleged violation of [a] statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (emphasis added); Pub. L. No. 104-320, § 12(d).  National, however, is not an "interested party" because it is not an "actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  *American Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1301-02 (Fed. Cir. 2001).  The IRS itself emphasizes that neither National nor the relevant IRS employees are "actual or prospective bidders or offerors"; rather, only a separate, "most efficient and cost effective organization" formed by those employees would be such a prospective bidder or offeror.  Also, nothing in the Disputes Act deprives this court of jurisdiction over non-interested parties.  *See City of Albuquerque v. United States Dep't of Interior*, 379 F.3d 901, 910-11 (10th Cir. 2004).  Accordingly, the Disputes Act does not withdraw subject matter jurisdiction from this court.

     **5.**    **The Civil Service Reform Act of 1978.**

National's lawsuit is not a "personnel action"; accordingly, the Civil Service Reform Act of 1978 (the "Reform Act") does not defeat subject matter jurisdiction here. *Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004).  "[The Reform Act] provides a comprehensive scheme to administer *adverse personnel actions against federal employees*."  *Id.* (emphasis added).  National's lawsuit objects to its loss of union dues as an alleged result of the IRS use of 2004 Act funds to convert its mailroom to operation by an outside contractor; its lawsuit is not a personnel action.  *Cf. Griffin v. Department of Agric.*, 1980 MSPB LEXIS 455, at *3-4 (Merit Systems Protection Bd. June 2, 1980) (holding that Merit Systems Protection Board,

the adjudicatory body to which Reform Act refers "personnel actions," lacks jurisdiction to consider the underlying legitimacy of an agency reduction in force plan).  Accordingly, the Reform Act does not withdraw subject matter jurisdiction from this court.

      **6.**      **Mootness.**

The expiration of the 2004 Act (and a continuing resolution that extended its terms) and the enactment of the Consolidated Appropriations Act of 2005 (the "2005 Act"), Pub. L. No. 108-447, do not render National's lawsuit moot.  "[E]ven where litigation poses a live controversy when filed, the doctrine of mootness requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *21st Century Telesis Joint Venture v. Federal Commc'ns Comm'n*, 318 F.3d 192, 198 (D.C. Cir. 2003) (quotation marks omitted).  National does not here dispute that before January 23, 2004 and after December 8, 2004, the IRS, without first conducting a public-private competition, could spend money to convert its mailroom to operation by an outside contractor.  National does allege, however, that if the IRS had waited until December 9, 2004 to renew its spending of such funds, this would have delayed the date on which certain employees lost their jobs – and, thus, delayed the date on which National stopped receiving union dues from those employees.  Accordingly, National's lawsuit is not moot.

      **B.**      **Conversion of the Mailroom.**

The undisputed material facts establish that the IRS illegally used 2004 Act funds to convert its mailroom to operation by an outside contractor.

1. **Undisputed Material Facts.**

The following facts are not disputed:

- On or before April 15, 2003, the IRS decided to convert its mailroom to operation by a private contractor. *See* Plaintiff's Statement of Material Facts Not in Dispute ¶ 3; Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶ 3.

- On April 15, 2003, the IRS solicited from a private contractor, ServiceSource, a negotiated bid for operation of the IRS mailroom. *See* Defendant's Statement of Material Facts Not in Dispute ¶ 2; Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute ¶ 2.

- On October 31, 2003, the IRS and ServiceSource executed a contract allowing the IRS, at its discretion, to place "task orders" with ServiceSource for employees to operate the IRS mailroom. *See* Plaintiff's Statement of Material Facts Not in Dispute ¶¶ 8, 9, 10; Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶¶ 8, 9, 10.

- The IRS-ServiceSource contract did not require the IRS to issue any task orders and thus did not require that it use any ServiceSource employee(s). *See* Plaintiff's Statement of Material Facts Not in Dispute ¶¶ 9, 10; Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶¶ 9, 10.

- Between January 23, 2004 and December 8, 2004, the IRS used 2004 Act funds to issue task orders under the IRS-ServiceSource contract, thereby gradually replacing its mailroom employees with ServiceSource employees. *See* Plaintiff's Statement of Material Facts Not in Dispute ¶¶ 12, 24; Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶¶ 12, 24.

- Pursuant to sixty-days notice provided on October 8, 2004, the last IRS mailroom employees lost their jobs on December 10, 2004. *See* Plaintiff's Statement of Material Facts Not in Dispute ¶ 20; Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶ 20; Defendant's Supplemental Statement of Material Facts Not in Dispute ¶ 2; Plaintiff's Response to Defendant's Supplemental Statement of Material Facts Not in Dispute ¶ 2.

- The replacement of IRS mailroom employees, at least some of whom were

>   National members, with ServiceSource employees, none of whom are
>   National members, resulted in National's loss of union dues.
>   *See* Plaintiff's Supplemental Statement of Material Facts Not in Dispute ¶¶
>   1, 2, 3; Defendant's Response to Plaintiff's Supplemental Statement of
>   Material Facts Not in Dispute ¶¶ 1, 2, 3.

- The IRS never held a public-private competition to determine who should perform its mailroom function. *See* Plaintiff's Statement of Material Facts Not in Dispute ¶ 5; Defendant's Response to Plaintiff's Statement of Material Facts Not in Dispute ¶ 5.

The parties further agree that the relevant terms of the 2004 Act were effective from January 23, 2004 to December 8, 2004, at which time the 2005 Act took effect. *See* Plaintiff's Statement of Material Facts Not in Dispute ¶ 21; Def's Mem. in Opp. to Pl's Mtn. for S.J. and in Support of Def's Cross-Mtn. for S.J. at 20; Defendant's Suggestion of Mootness at 2-3; Plaintiff's Response to Defendant's Suggestion of Mootness at 3-4.

**2.     Merits Analysis.**

The material facts are not in dispute: the IRS (1) decided to convert its mailroom to operation by a private contractor and entered into a contract with such a private contractor, ServiceSource, before the 2004 Act restrictions went into place, (2) the ServiceSource contract did not obligate the IRS to use any ServiceSource employee(s), and (3) the IRS, while the 2004 Act restrictions were in place and without ever conducting a public-private competition, issued and paid for task orders under the ServiceSource contract such that the IRS mailroom employees were gradually replaced by ServiceSource employees. The remaining question is legal: did the IRS use of 2004 Act funds to issue task orders under the ServiceSource contract constitute the use of those funds to "convert" its mailroom to operation by an outside contractor? National correctly answers "yes": the use of 2004 Act funds to issue task orders under that contract did

constitute the use of those funds to convert the mailroom.

The analysis "begin[s] with the plain language." *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004). The 2004 Act barred the IRS from using its funds "to convert to contractor performance an activity or function . . . unless . . . the conversion is based on the results of a public-private competition plan." 2004 Act, Div. F, § 647(a). Using the dictionary definition suggested by the IRS, "convert" means "[to] turn or change into something different; change in character or function, transform." 1 New Shorter Oxford English Dictionary at 502 (1993). Here, the 2004 Act barred the IRS from using its funds to "convert" – i.e., to "change" or "transform" – its mailroom function to operation by an outside contractor. Yet the IRS used 2004 Act funds to pay for task orders used to replace its departing mailroom employees with ServiceSource employees such that ServiceSource came to operate the mailroom.

The IRS counters that it converted its mailroom by, at the latest, the date of its execution of the ServiceSource contract (October 31, 2003), and thus that 2004 Act funds could not have been used in the conversion. For support, the IRS references an Office of Management and Budget ("OMB") letter interpreting a particular OMB directive (Circular A-76) that, similarly to the relevant portion of the 2004 Act, requires a public-private competition before an agency's conversion of a function to operation by a private contractor. The referenced letter states that the Circular A-76 conversion restrictions do not apply where the relevant agency (e.g., the IRS) *decided* in favor of conversion before the restrictions took effect. *See* Def's Mem. in Opp. to Pl's Mtn. for S.J. and in Support of Def's Cross-Mtn. for S.J., Declaration of Mathew C. Blum, Ex. C. The IRS urges the court likewise to hold the 2004 Act conversion restrictions inapplicable where an agency, like the IRS here, had decided on conversion before the effective

date of the 2004 Act.

Despite the letter cited by the IRS, the OMB's Circular A-76 itself suggests that a conversion occurs with a change in the entity performing the relevant function, not with an agency's decision to effect such a change. The circular defines a conversion as "a change in the *performance*" of a function and directs that, where a conversion is merely in progress at the time the conversion restriction took effect, it be adjusted to one based on a public-private competition. OMB Circular A-76 (revised May 29, 2003) § 7(a), Attach. D (emphasis added). In other words, under the OMB's written guidelines, it is not the timing of the agency's "decision" to convert that controls the applicability of the competition requirement but whether the "performance" of the activity has changed; if the conversion is merely in progress, Circular A-76 directs the adjustment of the conversion to one based on a public-private competition. Accordingly, Circular A-76, to the extent relevant, supports National's reading of the 2004 Act.

The IRS also invites interpretation of the 2004 Act in light of Congress's more recent bar of the Department of Defense from spending particular funds "to convert to contractor performance an activity or function," a bar that included an exception, in particular circumstances, for "enter[ing] into a contract" for conversion. Department of Defense Appropriations Act of 2005 (the "2005 Defense Act"), Pub. L. No. 108-287, § 8014(a), (b). From this act (and in order to avoid the perhaps unlikely result that Congress meant to authorize the Department of Defense to enter certain contracts under which it would have no immediate authority to issue task orders), the IRS apparently would conclude that congressional bars on the expenditure of funds for conversion must not apply to the issuance of task orders. The 2005 Defense Act, however, cannot support such an assumption. Just as likely (in fact, more likely) is

that Congress implicitly authorizes task orders under any contract expressly excepted from a general expenditures ban.  Such an assumption would explain the 2005 Defense Act's failure to expressly authorize task orders under the contracts permitted by that act without impacting the IRS-ServiceSource contract, which Congress did not expressly authorize.

Finally, the IRS seeks *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), deference to its 2004 Act interpretation.  *Skidmore* deference, however, is appropriate only to the degree to which the relevant agency's interpretation is thorough, valid, consistent, and otherwise persuasive.  *Brown v. United States*, 327 F.3d 1198, 1205 (D.C. Cir. 2003).  As noted above, the IRS interpretation is not thorough, valid, or persuasive.

Accordingly, the undisputed material facts establish that the IRS illegally used 2004 Act funds, without having first held a public-private competition, "to convert [its mailroom] to contractor performance."  2004 Act, Div. F, § 647(a).  An accompanying Order grants in part and otherwise denies without prejudice National's motion for summary judgment and denies the IRS cross-motion for summary judgment.  The Order grants National's summary judgment motion insofar as it seeks a declaration that the IRS violated the 2004 Act by using funds appropriated by that act to convert its mailroom; the Order otherwise denies that motion without prejudice.  The Order directs that the parties propose a joint plan for the further briefing of the propriety of National's additional requested relief: i.e., National's request (1) that at least certain IRS employees whose mailroom employment ended after January 23, 2004 receive reinstatement and be "made whole for any loss of pay they suffered" and (2) for reasonable attorney fees and expenses.

**CONCLUSION**

For the foregoing reasons, an accompanying Order grants National's motion for leave to file a second amended complaint, denies the IRS motion to dismiss National's first amended complaint for lack of subject matter jurisdiction, grants in part and otherwise denies without prejudice National's motion for summary judgment, denies the IRS cross-motion for summary judgment, and invites briefing and argument about the propriety of National's additional requests for relief.

/s/

Louis F. Oberdorfer
UNITED STATES DISTRICT JUDGE

DATED: February 22, 2006